IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY  Plaintiffs  vs.  KENNETH L. LE, M.D., BOWLVA M. LEE, D.O., PHONG Q. LE D.O., DAVID D. NGUYEN, M.D., INTERVENTIONAL SPINE OF TEXAS, PLLC, REGENA RATCLIFF, HOUSTON ANESTHESIOLOGY ASSOCIATES, PLLC, COMPASS DIAGNOSTICS, LLC, LISA K. THAI, and JOHN TIMOTHY TURNEY, C.R.N.A.  Defendants | § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:19-cv-02169 |

**DEFENDANTS KENNETH L. LE, M.D., BOWLVA M. LEE, D.O., PHONG Q. LE, D.O., DAVID D. NGUYEN, M.D., INTERVENTIONAL SPINE OF TEXAS, PLLC, REGENA RATCLIFF, HOUSTON ANESTHESIOLOGY ASSOCIATES, PLLC AND JOHN TIMOTHY TURNEY, C.R.N.A'S
REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

i

# TABLE OF CONTENTS

*Table of Contents* ...................................................................................................................... ii

*Table of Authorities* .................................................................................................................. iii


A.  Allstate Fails To Show That Its Allegations Of Fraud Satisfy The Requirements Of Rule 9(b), Confirming That It Can State No Claim Upon Which Relief Can Be Granted. ............... 2

   1.  Not surprisingly, Allstate is unable to identify the specific fraudulent statements and misrepresentations each defendant supposedly made. ............................................................. 2

   2.  Allstate is unable to identify the mystery standard it applies to allege that the procedures in question were not necessary. ................................................................................ 2

   3.  Ironically, Allstate is unable to disclose any facts supporting fraudulent concealment. .... 4

   4.  Allstate has failed to show that it alleged the specific intent of each defendant. ............... 6

   5.  Allstate's misguided reliance on the opinion in *Benhamou* further confirms that it cannot show that its allegation of mail fraud satisfies rule 9(b). .......................................................... 7


B.  Allstate Has Identified No Facts Establishing That The Defendants Had Supervisory Involvement In Either Enterprise. ............................................................................................. 8


C.  Allstate Is Unable To Show Its Damages Theory Is Not Speculative. ..................................... 9


Conclusion ................................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Donovan*, No. H-12-0432, slip op. at 18 (S.D. Tex., July 3, 2012) ............................... 4
*Allstate Ins. Co. v. Receivable Finance Co.*, 501 F.3d 398, 414 (5th Cir. 2007) ......................................... 9
*Allstate Ins. Co. v. Rehab Alliance of Tex., Inc.,* No. 14-13-00459-CV (Tex. App.—Houston [14th Dist. Apr. 21, 2015, pet. denied) ................................................................................................................ 10
*Benhamou*, 190 F. Supp. 3d at 660 ............................................................................................................ 7
*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ............................................................................................ 8
*United States v. Plato*, 593 Fed. Appx. 364, 371 (5th Cir. 2015) ............................................................... 6

**Statutes**

Tex. Admin. Code §165.2(d) ....................................................................................................................... 8
Tex. Admin. Code §165.1(a) ....................................................................................................................... 8
Tex. Admin. Code §165.2 ............................................................................................................................ 8
Tex. Prac. Rem. Code. Section 18.001(b), (e), (f) ...................................................................................... 9

Allstate's Response only serves to underscore the deficiencies of its pleadings. Rather than articulating its accusations with factual specificity, Allstate merely reiterates the vague assertions from its Complaint. For example, Allstate alleges that IST withheld portions of medical records. However, it does not identify which patients' records were withheld, the contents of those records, who withheld them, or how this is linked to any predicate acts or elements of the pled causes of action. Allstate cannot even state how it knows records were withheld or why the contents of those records would have made a difference in the settlement of the underlying claims. The reader is left stranded in a sea of speculation.

This goes to show that Allstate is incapable of pleading with particularity the circumstances required to support its causes of action. Allstate's pleading is riddled with disjointed libelous statements about the various defendants, which are nothing more than a series of red herrings--as none of them lead to a cause of action. As defendants demonstrated in their Motion to Dismiss, even if all of the factual allegations against each defendant are considered collectively, they do not amount to a viable cause of action against that defendant nor do they sufficiently show a supervisory role in a RICO enterprise.

As pled, Allstate's accusations cannot distinguish between fraud and differences in professional judgment among physicians. Allstate has pled no facts establishing a standard by which the medical procedures performed can be deemed "unnecessary." While a difference of opinion is not uncommon among healthcare professionals, Allstate has adopted the position that a physician recommending a course of treatment that costs Allstate too much money constitutes fraud. Having settled the patients' claims years ago, Allstate now comes to federal court to seek a refund on the unsupported grounds that these medical procedures were unnecessary.

A.  **Allstate Fails To Show That Its Allegations Of Fraud Satisfy The Requirements Of Rule 9(b), Confirming That It Can State No Claim Upon Which Relief Can Be Granted.**

1. Not surprisingly, Allstate is unable to identify the specific fraudulent statements and misrepresentations each defendant supposedly made.

In its response, Allstate merely reiterates its accusations without identifying any specific statements or representations each Defendant made or concealed. It does not refute that it must meet those requirements, yet, simply waves its hand at 102 paragraphs in its Complaint and declares "[t]he Complaint sets forth the alleged enterprises and scheme in detail." Response, ¶¶ 30, 31. Of course, pleading fraudulent acts with particularity under rule 9(b) is not the same as "alleg[ing] the enterprises and scheme in detail." *Id*. at ¶31.

As shown in the defendants' Motion to Dismiss, Allstate has not pled fraud with the required particularity in relation to each defendant. Instead, it has impermissibly lumped all the defendants together. For example, Allstate alleges that Regena Ratcliff was an office manager. Complaint, ¶ 80. She is not a healthcare provider. Yet, she is among the "defendants" Allstate alleges made "fraudulent findings regarding the necessity of surgical injection procedures" for 123 patients. *See, e.g.*, complaint, ¶ 221. She and the other defendants are entitled to know the specific statements that constitute the alleged "fraudulent findings" they purportedly made in relation to the treatment of each of the 123 patients. Remarkably, Allstate never identifies any specific fraudulent statement that any specific defendant made regarding the medical treatment for any specific patient.

2. Allstate is unable to identify the mystery standard it applies to allege that the procedures in question were not necessary.

Similarly, rule 9(b) requires that Allstate plead facts identifying the specific statements or concealments that each defendant made to supposedly inflate the charges for medical services.

2

While Allstate identifies several methods it contends led to the purported inflation, it fails to disclose the specific statements, representations, or concealments made by each defendant, let alone which of those, resulted in the alleged inflated charges. *See, e.g.*, response, ¶ 30. Allstate fails to satisfy the requirements of rule 9(b) yet again.

Rule 9(b)'s specificity requirements are important here because Allstate is unable to identify the standard it applies when declaring medical procedures "unnecessary." Allstate ignores that the decision to move forward with a course of treatment arises from the doctor-patient relationship—the patient and doctor decide together how proactive they want to be in their interventions. Sometimes patients seek second opinions from other doctors. This is not because the first doctor is being fraudulent. It is because physicians are free to exercise professional judgment and may arrive at completely different opinions for the same exact patient. Courtrooms across the country hear testimony every day from medical experts who disagree about a patient's medical care. A difference of opinion is not fraud.

Allstate has pled no facts to distinguish its accusations against the defendant physicians from a mere difference of opinion on medical care with Allstate. They have pled no facts to show that any applicable standards of care were breached, any patients were harmed or dissatisfied with their treatment, or that any codes or statutes were violated. In fact, Allstate has pled no facts to allow the reader to know what constitutes a necessary procedure and what constitutes an unnecessary one. "Necessity" is a term that can have different meanings within different disciplines such as law, medicine, and physics. Allstate provides no clue as to the definition they are applying or if they are equivocating between multiple meanings. This hardly meets the specificity requirements of rule 9(b), nor does it make sense that an automobile insurance company gets to dictate to doctors which treatments they can perform.

Allstate merely disagrees with the defendant physicians' exercise of their professional judgment in rendering medical treatment. Allstate refuses to reveal the basis for its disagreement—it fails to identify the specific statements or representations it relies on and the facts that purportedly show that the treatment does not satisfy its mystery standard. *See Allstate Ins. Co. v. Donovan*, No. H-12-0432, slip op. at 18 (S.D. Tex., July 3, 2012) (noting that Allstate's conclusory, vague, and non-specific allegations failed to reveal "what facts lead the plaintiffs to believe that any such statements are fraudulent misrepresentations . . . ."). Not only is Allstate's necessity standard a complete mystery, Allstate does not even bother to plead facts that would allow the reader to identify the parameters of the standard. Allstate's vagueness precludes the requisite notice to which the defendants are entitled under the specificity requirements of rule 9(b).

3. Ironically, Allstate is unable to disclose any facts supporting fraudulent concealment.

Allstate has nothing to show to support its allegation of fraudulent concealment. Allstate fails to plead any facts showing that any specific defendant failed to disclose any specific document, record, or statement pertaining to the treatment of any specific patient.

The patients' personal injury claims fall into two categories: (1) those that were resolved without litigation, and (2) those that were resolved after litigation was commenced. Regarding the prelitigation claims, Allstate's allegations do not factually establish that the defendants concealed anything. In those cases, the patients' attorneys requested the records from IST and forwarded them to Allstate in demand packets, per the allegations in the Complaint. How does Allstate know which records were requested by the patients' attorneys? How does Allstate know that there were other records that were responsive to these requests but not produced? How does Allstate know that the patients' attorneys submitted everything they received from IST to Allstate?

IST has no control over the scope of the requests made by the patients' attorneys, nor does IST have any control over which of these records the attorneys decide to submit to Allstate. Allstate has pled no facts to show that IST engaged in fraudulent concealment when it is the patients' attorney who controls which records to request and which ones to forward. Allstate has not pled facts regarding a single patient to establish that IST produced less than what was requested by the patients' attorney. As such, Allstate has failed to allege facts establishing that any defendant committed fraudulent concealment by withholding medical and billing records from Allstate for any patient in the prelitigation category.

Regarding the patient claims resolved during litigation, Allstate has also failed to show that the documents IST produced were less than what was requested. Under Texas law, requests for medical records are governed by Tex. Admin. Code §165.2. The definition of "medical records" adopted by this provision is the one set forth in Tex. Admin. Code §165.1(a). *See* Tex. Admin. Code §165.2(d). This definition does not encompass images and physicians' notes, which are items Allstate alleges were concealed. Consistent with the applicable law, it is not uncommon for medical providers to require a specific request for these items. Allstate has not pled specific facts showing that IST did not produce these items in response to requests specifically requesting them for any of the patients. Thus, Allstate fails to sufficiently allege fraudulent concealment for the litigation cases.

Allstate had the opportunity to scrutinize the responses to its discovery requests in the previous litigation. If Allstate concluded that certain records, within the scope of their discovery requests, were omitted from production, it should have raised those issues in the state court in which the litigation was pending. The state courts were in the best position to determine whether any documents that were not produced were responsive and discoverable. Nothing in the pleadings

suggests that Allstate attempted to pursue the remedies available to it in state court. They are now filing a lawsuit in federal court to allege that there was discovery abuse in state court cases disposed of years ago. The time to raise those issues has passed and the venue to do so is not this one.

Allstate has failed to plead any specific facts showing that it relied on IST's medical and billing records. Upon receiving them, Allstate had the opportunity to have the records reviewed by its own experts to determine what treatment was necessary. Its adjusters had the opportunity to evaluate the reasonableness of the charges—after all, that is one of their primary duties in handling claims. In state court litigation cases, Allstate could have had its experts file counteraffidavits under Tex. Prac. Rem. Code. Section 18.001(b), (e), (f) disputing the necessity of the treatment and reasonableness of the charges. Additionally, Allstate could have offered deposition or trial testimony from its own medical experts to further challenge defendants' medical services. Allstate fails to allege that it was prevented from pursuing any of these available avenues.

In short, Allstate had multiple bites at the apple. It has not pled any facts showing that it employed, much less exhausted, any of these available remedies in state court before filing its claims in federal court. It leaves the impression that Allstate would rather use taxpayer money to get a refund on its settlements in federal court, than incur expert costs to fight the claims in the appropriate state venue. While it may make economic sense for one of the largest insurance companies in the country, it is an improper use of the federal court system.

4. Allstate has failed to show that it alleged the specific intent of each defendant.

Allstate fails to explain how it can sufficiently allege the specific intent of each defendant when it has not even identified the supposedly fraudulent statements, representations, and concealments each purportedly made. Instead, it relies on the facts in *United States v. Plato*, 593 Fed. Appx. 364, 371 (5th Cir. 2015). Complaint, ¶ 37. However, there, the specific fraudulent

6

statements were clearly identified. *Plato*, at *10 (noting that specific intent was shown because the evidence showed that the defendant drafted specific, fraudulent representations). Here, Allstate identifies only categories of fraud and can cite only two paragraphs from its 622-paragraph Complaint concerning only two defendants in an unsuccessful attempt to establish the necessary specific intent. Response, ¶ 38. Therefore, Allstate has failed to plead the defendants' specific intent.

     5.     Allstate's misguided reliance on the opinion in *Benhamou* further confirms that it cannot show that its allegation of mail fraud satisfies rule 9(b).

Allstate disingenuously contends that the court in *Benhamou* "within a section of the opinion as to whether predicate acts of mail fraud were sufficiently alleged, found the Complaint was adequate . . . ." Response, ¶ 12 (quoting 190 F. Supp. at 661). However, the court was not addressing whether the allegations met the specificity requirements of rule 9(b). Instead, the section in which the quotation is located is entitled "b. Incident to the Scheme Is Sufficiently Alleged With Regard To The BCPC Defendants." *Benhamou*, 190 F. Supp. 3d at 660. The court merely concluded that the allegations were sufficient to show that the success of the defendants' scheme depended "'in some way' on each mailing . . . ." Thus, Allstate's desperate attempt to find support in the *Benhamou* opinion only confirms that it has failed to satisfy the requirements of rule 9(b) and cannot state a claim on which relief can be granted.

Furthermore, Allstate has no answer for the result in the *Donovan* opinion. That is because the court specifically concluded that Allstate's allegations were woefully deficient in relation to rule 9(b)'s specificity requirements. Under the heading "(2) Fraud Is Not Alleged With Particularity" the court noted that "plaintiffs fail to explain why, absent these limited categories of information, they are unable to satisfy Rule 9(b)'s requirement to plead predicate acts of mail fraud with particularity." *Donovan*, *19. Here, Allstate also fails to give any reason why it cannot plead

7

the specific fraudulent statements and misrepresentations made and identify specific documents concealed by specific defendants in relation to the treatment of specific patients. The reason is clear—Allstate has no specific statements and misrepresentations to support its claims.

**B.     Allstate Has Identified No Facts Establishing That The Defendants Had Supervisory Involvement In Either Enterprise.**

Allstate offers no theory, let alone facts, establishing that the defendants had a supervisory role in a RICO enterprise. Allstate attempts to obfuscate this requirement by quoting the opinion in *Reves v. Ernst & Young*, 507 U.S. 170 (1993), for the proposition that it is not necessary to prove that the defendants were those with "primary responsibility for the enterprise's affairs." Response, ¶ 40. However, the defendants have not contended that Allstate was obligated to so allege. Instead, defendants contend that Allstate was required to allege facts showing that each defendant had supervisory involvement in each enterprise. Motion, pp. 9-19.

Allstate's own allegations rebut any supervisory involvement by Bowlva Lee, Phong Le, David Nguyen, Tim Turney, Regena Ratcliff, and HAA. The very testimony on which Allstate relies confirms that these physician defendants had no supervisory involvement over the affairs of IST. Allstate provides no basis for its contention that the physicians were employees of IST. In fact, none were employees: Each was an independent contractor who provided medical services at IST. Indeed, Allstate's own allegations establish that Tim Turney was also an independent contractor, not an IST employee. *See, e.g.*, complaint, ¶ 54. Nor did Allstate allege that any of these defendants had an ownership interest in IST or any right of control. Despite Allstate's hollow summary of its allegations, it identifies no facts showing that defendants Bowlva Lee, Phong Le, David Nguyen, Tim Turney, Regena Ratcliff, and HAA otherwise had any supervisory involvement in IST or either of the enterprises.

**C.      Allstate Is Unable To Show Its Damages Theory Is Not Speculative.**

No amount of discovery or evidence will substantiate Allstate's allegation that, but for IST's records, it would have paid less to resolve the patients' claims. While it now insists that it would have *offered* less, that does not mean that the patients would have *accepted* less or that a jury would have awarded less. Allstate's pleading misconstrues settlements as a unilateral process. Reaching a settlement agreement requires a meeting of the minds. The monetary amount the patients would have accepted or what a factfinder would have awarded are entirely outside of Allstate's control.

Moreover, Allstate's damages theory is speculative because it considers IST's records in isolation, to the exclusion of other factors. It fails to account for the fact that the decision to settle can be influenced by an assessment of liability, the credibility of witnesses, the track record of opposing counsel, and the costs associated with defending the claim. *See Allstate Ins. Co. v. Receivable Finance Co.*, 501 F.3d 398, 414 (5th Cir. 2007) (stating "if Allstate and Encompass settled some of the 1,800-plus claims at issue due entirely to factors other than any reliance on A & I's representations . . . then the amount from those files that eventually found its way to the defendants cannot properly be included in the damages calculation."). One would have to ignore the realities of settling claims to assume that a specific amount from a global settlement could be attributed to IST's records, independent from any other considerations.

Allstate's damages theory is hopeless. Assuming, arguendo, Allstate proves fraud, it is only entitled to recover the specific amounts linked to fraud. *See id.* This would require Allstate to prove which portions of the medical records were fraudulent, why they were fraudulent, and how a dollar amount can be computed from just those portions of the records, when settlements are made in lump amounts intended to release any and all economic and non-economic damages

9

the claimants may bring. *See Allstate Ins. Co. v. Rehab Alliance of Tex., Inc.,* No. 14-13-00459-CV at *14 (Tex. App.—Houston [14th Dist. Apr. 21, 2015, pet. denied) (concluding "Allstate presented evidence to support its theory of injury; however, it did not present evidence on the fact of legal damages resulting from the inclusion of allegedly fraudulent charges as well as valid charges in certain claims, which is **fatal** to its recovery") (emphasis added). Allstate's pleading merely states a dollar amount for each patient as being attributable to defendants' records without any explanation as to how they arrived at that number. *See, e.g.*, complaint, ¶ 223. Allstate does not and cannot show that the amounts it claims as damages are anything more than pure conjecture.

## Conclusion

As shown above, Allstate has failed to successfully refute any of the grounds for dismissal set forth in defendants' Motion to Dismiss pursuant to rule 12(b)(6). Accordingly, the Motion to Dismiss should be granted.

Respectfully submitted,

*/s/* Nick Oweyssi
Nick Oweyssi
Attorney-In-Charge
State Bar No. 24072875
SDTX Bar No. 1156202
The Oweyssi Law Firm
3200 Southwest Frwy., Suite 1100
Houston, Texas 77027
T: (713) 225-2222
F: (713) 766-6911
E: nick@oweyssilaw.com

*Attorney for Defendants,
Kenneth L. Le, M.D., Bowlva M. Lee, D.O.,
Phong Q. Le, D.O., David D. Nguyen, M.D.,
Interventional Spine of Texas, PLLC, Regena
Ratcliff, Houston Anesthesiology Associates,
PLLC, and John Timothy Turney, C.R.N.A*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Reply was served upon all counsel of record pursuant to the Federal Rules Of Civil Procedure via e-mail, facsimile transmission, certified mail, or hand delivery on August 30, 2019.

*/s/* Nick Oweyssi
Nick Oweyssi